LAS MONJAS RACING CORPORATION, INC., Plaintiff and Appellant, v. PUERTO RICO ILUSTRADO, INC., JOSÉ COLL VIDAL and ANGEL RAMOS, Defendants and Appellees.

No. 8207. Argued May 6, 1941.—Decided June 20, 1941.

Celestino Iriarte, F. Fernández Cuyar, and H. González Blanes for the appellant. R. Cuevas Zequeira, for the appellees.

Mr. Justice Travieso delivered the opinion of the Court.

The plaintiff corporation, owner and operator of a race track in the Capital of this Island, brought suit in the District Court of San Juan, to collect the sum of $100,000 from the corporation that publishes the newspaper *"El Mundo"* and from two of its directors, as compensation for the damages it alleges to have suffered by reason of the publication of certain reports that the plaintiff alleges to be false.

It is alleged in the complaint that on May 25, 1939, the defendants, maliciously and without cause or motive, tending to expose the defendant to public contempt and to prejudice its business, published, knowing that it was false, and in relation with a case that was being tried in the District Court of San Juan, *Rexach Racing & Sporting Corporation, Inc.,* v. *Insular Racing Commission,* the following:

"Lack of Honesty in the Races of Las Monjas and Las Casas.— This is alleged by the Commission, adding that it will be compelled to take drastic action. It also charges serious defaults in the Las Casas pool, and that horses that run in Las Casas and Las Monjas have been purchased with money that belongs to persons interested in said tracks."

It is also alleged that with such words, and knowing their falsity, the defendants wilfully said and maintained that the plaintiff, and so it was understood by the public, was holding horse races dishonestly in its track, and that the corporation, as well as its directors, have an interest in the horses that run in plaintiff's tracks, all of which constitutes a charge that an offense was committed, in violation of Section 41 of the Racing Law (Act No. 11 of 1932, Laws of 1931–32, page 194), in relation with Section 38 of the same Act, as amended by Act No. 17 of 1935 ((2) page 92).

The defendants answered denying the charges of malice and of intention on their part to expose the plaintiff to public contempt. And in opposition to the complaint they alleged that the information published by them, in the heading and in its text, was copied *verbatim* from a sworn motion,

filed in the record by the Insular Racing Commission, in a case pending before the District Court of San Juan, entitled: *"Rexach Racing & Sporting Corporation, Inc.,* v. *Insular Racing Commission,* Injunction''; that said information was published in good faith, with the purpose of informing the community of the allegations which, as respondent and in its defense, were made by the Insular Racing Commission; that said allegations were a part of a judicial proceeding in which the public, which contributes with its money to the support of the racing sport, was interested, and that in the information published which gave rise to the complaint, no commentaries of the newspaper appear, nor any statement as to the truthfulness of the facts stated under oath by the Insular Racing Commission.

At the hearing, when the plaintiff finished presenting his evidence, the defendants filed a motion for nonsuit, stating that they would offer no evidence if the motion were dismissed, and the case was thus submitted for decision. That decision was against the plaintiff, which was not satisfied and filed this appeal.

The only error assigned to the trial court is its determination that the publication in the present case had a privileged character and that the headlines also had that character.

■ From the transcript of the evidence it appears that the following facts, relevant to the only question involved in the present appeal, were proven:

1. On May 24, 1939, the Insular Racing Commission, defendant in civil case No. 31,845 (brought by Rexach Racing & Sporting Corporation), filed before the District Court of San Juan a pleading entitled: "Motion to annul the order to show cause issued by the Hon. Roberto H. Todd, Jr., Judge of this District Court, on May 23, 1939." From said motion of 15 pages, we insert only subdivisions 2 and 3 of letter (*k*) of the second paragraph, which are the only ones we consider pertinent for the decision of this appeal. They are as follows:

"2. In the races held on May 7, 1939, in the Las Casas Race Track, a certain number of *'cuadros'* were played. Their amount and

the nature of the bets reveal the purpose of one or two persons to obtain the total prize of the money played in the pool on that day; and, after an investigation was made by the Racing Commission, it arrived at the conclusion that the personnel employed by the Las Casas Racing Track for the pool business is inadequate and incompetent, that the computation of the total amount of the pool was not made that day until after the 4th race had been held, and that although it is true that all the 'cuadros' were deposited in the urns before the races started, the employees of Las Casas Race Track refused to offer their cooperation to the Insular Racing Commission in order to determine who were the persons who made the bets. The Insular Racing Commission states that approximately twenty to twenty-five thousand pool combinations are made every day that races are held; and the lack of cooperation in one of the race tracks to determine the form and manner in which the bets are made and the prizes are collected, is a serious offense that the commission cannot tolerate.

''3. The Commission alleges by information and belief that a great number of horses that are running in the Las Casas and Las Monjas race tracks have been bought with money belonging to persons interested in the corporations that administer said tracks; and that said persons have tried to buy other horses to be paid with a certain percentage of the prizes that said horses will win. This situation implies a lack of honesty and morality of such a nature in the holding of the races that the Insular Racing Commission will be compelled to take drastic action in this affair.''

2. The same day, May 24, 1939, said motion was set to be heard on the 29th.

3. On May 25, 1939, that is, on the day following that when the motion was filed and set for hearing, the defendant corporation published in the newspaper ''El Mundo'' the complete text of the motion which constitutes the basis for the alleged cause of action.

4. On May 29, 1939, the appellant corporation, as intervener in the pending case, *Rexach Racing & Sporting Corporation* v. *Insular Racing Commission*, requested that the motion filed by the Insular Racing Commission and especially subdivision 3 of letter (*k*) of the second paragraph be stricken from the record since the facts alleged are immaterial, impertinent, irrelevant and not germane to the cause of action on which the suit is based, nor to the legal problem involved in this case.

5. On June 6, 1939, the district court granted the complaint for intervention filed by Las Monjas Racing Corporation and as a con-

sequence thereof issued an injunction against the Insular Racing Commission and ordered that said pleading be stricken from the record.

The plaintiff bases its alleged cause of action on Section 2 of an act authorizing civil actions to recover damages for libel and slander, approved on February 19, 1902 (Section 1685, Rev. Stats. 1911) that reads as follows:

"Sec. 2.—Libel is the malicious defamation of a person made public by writing, printing, sign picture, representation, effigy, or other mechanical mode of publication tending to subject him to public hatred or contempt, or to deprive him of the benefit of public confidence and social intercourse, or to injure him in his business, or in any other way to throw discredit, contempt or dishonor upon him, or any malicious defamation made public as aforesaid, designed to blacken or vilify the memory of one who is dead and tending to scandalize or provoke his surviving relatives or friends."

The defendants rely, for their defense, on the provisions of Section 4 of the same law of February 19, 1902 (Section 1687, Rev. Stats. 1911), that says:

"Sec. 4.—A publication or communication shall not be held or deemed malicious when made in any legislative or judicial proceeding or in any other proceeding authorized by law. A publication or communication shall not be presumed to be malicious when made:

"*First*.—In the proper discharge of an official duty.

"*Second*.—In a fair and true report of a judicial, legislative, official, or other proceeding, or of anything said in the course thereof.

"*Third*.—To an insular official upon probable cause with the intention of serving the public interest or of securing the redress of a private wrong."

The only question to decide is whether or not the publication of the motion constitutes "an exact and true report" of the judicial proceedings that were brought by Rexach Racing & Sporting Corporation against the Insular Racing Commission before the district court.

In deciding this question in the affirmative, the lower court said:

"We are of the opinion that the motion filed by the Insular Racing Commission in case No. 31,845, *supra*, was a part and is a part of the judicial proceedings in said case; that since its filing it is a public document; that this court took action on the same when it set it for hearing; that said case is not one of private interest in which two parties litigate, but that it was a lawsuit in which there appear, on one part the corporations in charge of the race track business and other games, which unless expressly authorized by law, could not be operated, and on the other, the Insular Racing Commission, which is an agency of the Government of Puerto Rico especially created to regulate all that relates to horse racing in Puerto Rico. (See Section 5 of Act No. 17 of July 15, 1935.) Therefore, said lawsuit is one of public interest, and as such the reading public of the newspapers of the Island has the right to know its details; that to that effect, the publication was of a privileged character, and we are of the opinion furthermore that the omission to publish the word 'implies' in the headlines, does not constitute a variation of such a nature as to destroy the privileged character of all the publication; since other words were also omitted from the headlines, used by the Insular Racing Commission in its motion, among them, lack of 'morality' which was also applied to the plaintiff and to the Las Casas Racing Track. We consider that the fact that this court, thirteen days after the motion was filed and, in deciding the case on its merits, did order that the paragraphs that contained those statements made under oath by the Insular Racing Commission, be stricken from the record because they were immaterial to the issue of the case, did not compel the newspaper 'El Mundo' or any other, to wait for that decision before publishing said motion, as long as in so doing it did not vary or alter the meaning thereof, or make malicious and libelous charges against the interested parties. In the case at bar, the newspaper 'El Mundo' published the motion without comments, limiting itself in the first paragraph to say that it had been filed by the Insular Racing Commission."

The foregoing conclusions are upheld by the run of decisions on the matter. The general rule established by the courts is that when the alleged libel consists of headlines at the beginning of an article or report, the article or report and its headlines should be considered as one document, in

order to determine if the publication is defamatory. 40 A.L.R. 583; 52 A.L.R. 1438; 54 A.L.R. 1139 and 59 A.L.R. 1061.

██ The Court of Appeals of the State of New York, in *Campbell* v. *New York Evening Post*, 245 N.Y. 320, 157 N.E. 153, 52 A.L.R. 1432, disregarding the rule established and upheld by the weight of authorities, has established the rule that the publication of pleadings or other preliminary writings, which have not been brought to the attention of any judicial officer, and concerning which no judicial action has been taken, even though they had been filed, does not fall within the privilege granted to the publication of judicial proceedings, in the absence of a statute modifying the common law rule.

After examining and comparing the headlines with the text of the motion published by the defendant, we are of the opinion that said headlines are a just and true measure of the matter contained in the motion.

Even within the strict rule of the State of New York, the defendants would be protected by the privilege acknowledged by the statute. The motion published by the defendants had not only been filed in a proceeding already started but had also been object of judicial action, for the same day in which it was filed, the court set the day for the hearing. The motion was not published until the following day. See: *Kimball* v. *Post Publishing Co.*, 19 L.R.A. (N.S.) 862; *Lundin* v. *Post Publishing Co.*, 52 L.R.A. (N.S.) 207, in which it is held that the privilege exists when the court has taken some action because something more has been done than the mere filing of a pleading in the clerk's office. In the last of the cases cited the limits of the privilege are defined in a clear and precise manner:

"But this principle is limited to matters which really have been made the subject of judicial action. It does not give the right to publish statements made in declarations or other papers filed in

court, on the ground merely that they have been placed on the files of the court, or until they have been brought to the attention of the court and some judicial action has been taken upon them.''

■ Since this is a privileged publication and as evidence has not been offered tending to show that the defendants acted with malice when they published the text of the motion, we are of the opinion that the lower court did not err in granting the motion for nonsuit and in dismissing the complaint.

The judgment appealed from should be affirmed.

Mr. Justice Todd, Jr., took no part in the decision of this case.